UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>YOURELO YOUR FULL-SERVICE RELOCATION CORPORATION,<br><br>Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br>Case No. 19-13602-CJP |
| YOURELO YOUR FULL-SERVICE RELOCATION CORPORATION,<br><br>Plaintiff<br><br>v.<br><br>CITY OF REVERE,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | AP No. 19-1140-CJP |

**ORDER DENYING MOTION TO DISMISS**

Before the Court is the Motion to Dismiss [Dkt. No. 23] (the "Motion") filed by defendant City of Revere (the "City"), by which the City seeks dismissal of the Complaint [Dkt. No. 1] ("Complaint") in this adversary proceeding. In the Complaint, the Plaintiff and debtor-in-possession, Yourelo Your Full-Service Relocation Corporation (the "Debtor"), asserts the following claims: (1) Count I, avoidance of the transfer of the real property at 585 North Shore Road, Revere, Massachusetts (the "Property") to the City (the "Transfer") and recovery thereof for the benefit of the Debtor's estate (the "Estate") pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1) as a constructive fraudulent transfer[1]; (2) Count II, avoidance of the

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

1

Transfer and recovery of the Property for the Estate pursuant to §§ 544(b)(1) and 550(a)(1) as a constructive fraudulent transfer under the Massachusetts Uniform Fraudulent Transfer Act, M.G.L ch. 109A, §§ 5(a)(2) and 6(a); (3) Count III, avoidance of the Transfer and recovery of the Property for the Estate pursuant to §§ 547(b) and 550(a)(1) as a preferential transfer; and (4) Count IV, related injunctive relief seeking to enjoin the transfer or encumbrance of the Property. The Debtor opposes the Motion [Dkt. No. 28] (the "Objection").

On September 30, 2020, the Court held a hearing on the Motion (the "Hearing") at which the Court gave tentative rulings at the beginning of the Hearing, subject to further consideration after argument. Upon considering the further argument of counsel, the Court hereby DENIES the Motion for the reasons stated on the record and adopts the tentative rulings by reference, except as refined and expanded herein, primarily with respect to denial of dismissal of the constructive fraudulent conveyance claims under § 548(a)(1)(B) and M.G.L. ch. 109A, §§ 5(a)(2) and 6(a).

## Background

The City asserts that the Complaint should be dismissed as a matter of law "because there can be no constructive fraudulent transfer to a municipality in the Commonwealth of Massachusetts which follows and complies with the state's traditional 104[-]year[-]old tax title statute." Mot. 7. The City urges the Court to extend the reasoning of the Supreme Court in *BFP v. Resolution Trust Corporation*, 511 U.S. 531 (1994) ("*BFP*"), to conclude that the procedural protections of the Massachusetts property tax strict foreclosure scheme, and state interests supporting that scheme, preclude the Court from determining that the taxpayer, the Debtor, received less than "reasonably equivalent value" when its equity of redemption was foreclosed. *See* 511 U.S. at 545-46 (holding that that the price received at a mortgage foreclosure auction satisfied the requirement that transfers of an insolvent debtor's property be in exchange for

2

reasonably equivalent value so long as the foreclosure sale complied with the applicable state law). Extending *BFP*'s holding to the tax foreclosure context would result in a property (or its surplus equity) that may not be recovered from a municipality as the recipient of a constructively fraudulent conveyance if a tax foreclosure has been conducted in compliance with state law, regardless of the amount of the tax debt in relation to the value of the property. Whether the reasoning of *BFP* extends to tax foreclosure schemes that provide for strict foreclosure or "forfeiture," rather than an auction process that exposes a property to the market, has been the subject of conflicting judicial interpretation.[2] For the reasons stated below and on the record at the Hearing, the Court determines that the protections afforded a taxpayer by the strict foreclosure scheme adopted by the Massachusetts legislature, while intended to provide due process to a taxpayer, were not intended to, and in some cases may not, result in the exchange of "reasonably equivalent value" for purposes of determining whether property transferred pursuant to that scheme is a constructively fraudulent transfer in the bankruptcy context. Moreover, the state's interests in its tax collection scheme and the balance struck between the interests of the taxpayer and municipality, while strong, are overridden by the federal interests of recovery and ratable distribution embodied in §§ 544, 547, 548(a)(1)(B) and 550(a)(1) of the Bankruptcy Code.

### Legal Standard and Issue to Be Decided

While the Motion does not expressly cite to Fed. R. Civ. P. 12(b)(6), the Court construes the Motion as a motion requesting dismissal for failure to state a claim with respect to which the Court can grant relief pursuant to that rule, as made applicable to this Adversary Proceeding by Fed. R. Bankr. P. 7012(b). The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is

---

[2] *See generally* Laura B. Bartell, *Tax Foreclosures as Fraudulent Transfers—Are Auctions Really Necessary?*, 93 AM. BANKR. L.J. 681 (Winter, 2019) (collecting cases); Marie Reilly, *The Case for the Tax Collector*, 18 J. BANKR. L. & PRAC. 628 (2009).

3

to test the "legal sufficiency" of a complaint. *See, e.g., Gomes v. Univ. of Maine Sys.*, 304 F. Supp. 2d 117, 120 (D. Me. 2004); *Siniscalchi v. Shop-Rite Supermarkets, Inc.*, 903 F. Supp. 182, 186 (D. Mass. 1995). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Banco Cooperativo de Puerto Rico v. Herrera (In re Herrera)*, 589 B.R. 444, 451-52 (B.A.P. 1st Cir. 2018) (internal quotations and citation omitted).

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court must assume a complaint's well-pleaded factual allegations as true and construe them in the plaintiff's favor, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 681 (explaining "[i]t is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 (1st Cir. 2012) (concluding that courts may only consider complaint's non-conclusory and non-speculative facts). The issue is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *See Twombly*, 550 U.S. at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a . . . court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

The Debtor alleges in the Complaint that the City assessed real estate taxes and related interest and costs against the Property in the amount of $120,564.19 (the "Tax Obligations") as of June 20, 2017.  Compl. ¶ 8.  On October 3, 2019, after obtaining a judgment from the Massachusetts Land Court, the City recorded the judgment with the Registry of Deeds, which the Debtor alleges foreclosed the Debtor's equity of redemption and transferred absolute title to the Property from the Debtor to the City, constituting the Transfer.  *Id*. at ¶¶ 13, 16, 18.  The Debtor further alleges that, at the time of the Transfer, the City appraised the value of the Property at $684,100.00 and that the fair value of the Property was substantially greater than the amount of the Tax Obligations.  *Id*. at ¶¶ 19, 38.  While it may dispute some of the factual allegations in the Complaint,  the City does not contend that the Debtor improperly pleaded the fraudulent conveyance claims.[3]  Rather, the parties appear to agree that the issue to be decided is whether, as a matter of law, the Property transferred to the City by strict foreclosure of a tax lien in compliance with applicable state law may be recovered in bankruptcy as a constructively fraudulent conveyance where it has been alleged that the value of the property significantly exceeded the amount of the tax debt at the time of the transfer.

### Massachusetts Strict Foreclosure After a Tax Taking

The Commonwealth of Massachusetts and its municipalities have a substantial interest in the collection of taxes.  *See generally Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 522 (1981) (characterizing the collection of taxes as an "important a local concern"); *In re Murphy*, 331 B.R. 107, 120-21 (Bankr. S.D.N.Y. 2005) (describing the interest of taxing authorities in securing payment of outstanding tax obligations as "very important").  The Massachusetts legislature enacted a comprehensive scheme for the assessment and collection of property taxes and other charges by

---

[3] In fact, the City does not appear to contest the following: (1) that there was a "transfer" within the applicable statutory time periods, Answer ¶¶ 7, 9, 13, 16, 46, 64; Mot. ¶¶ 1, 22; (2) a creditor of the Debtor was a creditor at the time of the transfer, Mot. ¶ 26; and (3) the Property was the Debtor's primary asset, Mot. ¶ 1.

municipalities that can result in the strict foreclosure of a delinquent taxpayer's interest in a property. *See* M.G.L. ch. 60, § 1 *et seq*. A tax taking followed by strict foreclosure is the prevailing method used to collect unpaid property taxes in Massachusetts.[4] *See, e.g., Tallage Lincoln, LLC v. Williams*, 151 N.E.3d 344, 351-52 (Mass. 2020) (citations omitted) (recognizing that "[t]ax sales used to be the predominant method of collecting real estate taxes, but they have fallen out of use, except in a few municipalities, and have largely been replaced by tax takings"). Strict foreclosure, in contrast to a mortgage foreclosure, "does not involve any type of sale; rather, the foreclosure judgment extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's or third party's tax title into absolute title." *Id*. at 352. One Massachusetts court described the process, and its significant departures from a mortgage foreclosure, as follows:

> [T]ax foreclosure cases are unlike any other in certain important respects. Interest accrues at 14% from the time taxes are due until the collector's sale or tax taking occurs, G.L. c.59, § 57, and at 16% thereafter, G.L. c.60, § 62. A small tax bill can thus rapidly become much larger. Also, unlike mortgage foreclosures or executions on money judgments in ordinary civil cases, the tax-foreclosing party keeps all surplus. Once the right of redemption has been foreclosed, tax title is "absolute" and neither the property owner nor any party claiming through the owner (such as mortgagees, lienors, or attaching creditors) has any claim, then or later, to the property or any part of its value. M.G.L. c.60, § 64; *Buk Lhu v. Dignotti*, 431 Mass. 292, 296 (2000).

*Tallage LLC v. Meaney,* No. 11 TL 143094, 2015 WL 4207424, at *4 (Mass. Land Ct. June 26, 2015). A foreclosure judgment extinguishes all rights of redemption, subject to the taxpayer's right to file a motion to vacate the judgment within one year if the taxpayer pays the full redemption amount, plus interest; beyond that one year date, the court may only vacate the judgment if the taxpayer shows a denial of due process. *See* M.G. L. ch. 60, § 69; *Williams,* 151

---

[4] Another collection remedy provided by the statute is the sale of property subject to a tax lien by public auction. *See* M.G.L. ch. 60, §§ 40-51. This remedy was not utilized with respect to property owned by the Debtor and appears to be rarely employed by tax collectors in the Commonwealth.

6

N.E.3d at 352 (acknowledging that "[a]lthough G. L. c. 60, § 69, states that entry of the foreclosure judgment 'shall forever bar all rights of redemption,' the taxpayer may move to vacate the judgment if he or she pays the redemption amount, plus interest, within one year [and a]fter one year, the judgment is final and can be vacated only upon a showing of a denial of due process."). "[A]fter a strict foreclosure, the taxpayer loses any equity he or she has accrued in the property, no matter how small the amount of taxes due or how large the amount of equity."[5] *Williams*, 151 N.E.3d at 352; *see also Meaney*, 2015 WL 4207424, at *4 (failure of taxpayers to pay municipal water and sewer bills totaling $492.51 resulted in foreclosure of property with fair market value of $270,000).

### Can a Strict Foreclosure Conducted in Compliance with a State's Comprehensive Statutory Scheme Constitute a Constructively Fraudulent Conveyance Where Substantial Value is Transferred to a Municipality in Excess of the Amount of Tax Debt?

A trustee or debtor-in-possession may avoid any transfers made within two years of the bankruptcy filing if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligations; and was insolvent on the date that such transfer was made or such obligation was incurred . . . ." 11 U.S.C. § 548(a)(1)(B). In *BFP*, the Supreme Court held that the price received at a mortgage foreclosure sale (as opposed to "fair market value") constituted "reasonably equivalent value" as long as the foreclosure sale complied with the applicable state law. 511 U.S. at 545 (applying California law). However, the Court noted that its decision "covers only

---

[5] While strict tax foreclosures can lead to inequitable results, one commentator has noted that sixteen states have adopted strict foreclosure or forfeiture schemes for property tax collection. *See* Bartell, *supra* note 2, at 699. In *Williams*, the Supreme Judicial Court recently noted that "[s]everal of [the Commonwealth's] sister States have determined that excess value from a tax taking must be made available to the taxpayer as a matter of constitutional law" but that the parties in both *Williams* and in *Kelly v. Boston*, 204 N.E.2d 123, 125 (1965), where the court "considered the legislative history of the statutory scheme governing tax lien foreclosures and determined that the Legislature intended that the process result in forfeiture of the taxpayer's equity to the municipality . . . did not raise any constitutional challenge[s], and [the court] did not address the constitutionality of the statutory scheme." *Williams*, 151 N.E.3d at 352 n.4; *see also* Ralph D. Clifford, *Massachusetts Has a Problem: The Unconstitutionality of the Tax Deed*, 13 U. MASS. L. REV. 274, 276 (2018) (describing and questioning the constitutionality of the strict foreclosure scheme).

7

mortgage foreclosures of real estate" and "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id.* at 537 n.3. In examining such other considerations, a number of courts have declined to extend the narrow holding of *BFP* to constructively fraudulent transfer cases involving tax lien foreclosures where the state statutory scheme does not include a process to auction or otherwise establish the value of a subject property in relation to tax debt.[6] Most of these courts have viewed the absence of an auction or other process creating a competitive market for the subject properties as distinguishing those cases from *BFP*, precluding a finding of "reasonably equivalent value" with respect to fraudulent conveyance claims. *See, e.g., Smith,* 811 F.3d at 239 (holding tax foreclosure sale without bidding procedures lacking "reasonably equivalent value"). Those courts closely examined the substantive state tax foreclosure scheme and the particular facts of each case to determine whether the value obtained at the tax

---

[6] *See, e.g.*, *Smith v. SIPI, LLC (In re Smith),* 811 F.3d 228, 239 (7th Cir. 2016) (concluding that Illinois tax sale procedures with no competitive bidding and bid amount bearing no relationship to real estate do not establish "reasonably equivalent value"); *GGI Properties, LLC v. City of Millville (In re GGI Properties, LLC),* 568 B.R. 231, 243 (Bankr. D.N.J. 2017) (holding that New Jersey prepetition tax foreclosure sale did not establish "reasonably equivalent value" because sale price not correlated to value of property); *City of Milwaukee v. Gillespie,* 487 B.R. 916, 920 (E.D. Wis. 2013) (finding that *BFP* is inapplicable to non-sale foreclosure proceedings without a public sale offering); *Murphy v. Town of Harrison (In re Murphy),* 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005) (rejecting that *BFP* applies to New York tax forfeiture statute and concluding "[a] plaintiff has stated a claim that reasonably equivalent value was not obtained for a property seized by tax forfeiture where the state's procedure for tax forfeiture does not provide for a public sale with competitive bidding"); *Harris v. Penesi (In re Harris),* No. 01-10365, 2003 WL 25795591, *6 (Bankr. N.D.N.Y. Mar. 11, 2003) (determining no presumption for taxing authority of reasonably equivalent value under proper strict tax foreclosure proceeding); *Wentworth v. Town of Acton (In re Wentworth),* 221 B.R. 316, 319-20 (Bankr. D. Conn. 1998) (concluding that *BFP* inapplicable to Maine's tax foreclosure procedure without competitive bidding, explaining that the value of a tax lien bears no relation to the value of a property). Courts have, on the other hand, extended *BFP*'s presumption of reasonably equivalent value in a tax sale when the process includes a market bidding process and closely resembles a mortgage foreclosure. *See Tracht Gut, LLC v. LA Cty. Treasurer & Tax Collector (In re Tracht Gut, LLC),* 836 F.3d 1146, 1153-55 (9th Cir. 2016) (applying *BFP* presumption of reasonably equivalent value to tax sale conducted in accordance with California tax foreclosure statute because of it contained competitive market bidding procedures, the procedural safeguards that apply to mortgage foreclosures); *Kojima v. Grandote Int'l Ltd. Liab. Co. (In re Grandote Country Club Co., Ltd.),* 252 F.3d 1146, 1152 (10th Cir. 2001) (holding that the decisive factor in determining whether a tax taking transfer constitutes "reasonably equivalent value" is the existence of a procedure for competitive bidding and concluding that because tax sale conducted under Colorado law was subject to a competitive bidding procedure that the tax sale constituted a transfer for "reasonably equivalent value" under the Colorado Uniform Fraudulent Transfer Act); *Hollar v. Myers (In re Hollar),* 184 B.R. 243, 252 (Bankr. M.D.N.C 1995) (concluding that tax sale conducted in conformity with Internal Revenue Code represents "reasonably equivalent value" because it utilized procedural safeguards equivalent to those required by foreclosing mortgagees, including the conduct of a public sale with competitive bidding).

foreclosure bore any relationship to the value of the property. *See, e.g., Smith,* 811 F.3d at 239; *Wentworth*, 221 B.R. at 319-20. The Supreme Court based its holding in *BFP* on the premise that properties sold at a foreclosure auction are "simply *worth less*" than fair market value, but that the state foreclosure scheme still resulted in the opportunity to determine "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, [as being] the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." 511 U.S. at 539, 545. In a strict foreclosure tax sale, this reasoning cannot apply because the value received relates only to the amount of delinquent taxes. *See id.*; *Smith,* 811 F.3d at 239.

"A minority of courts have applied the *BFP* rationale to find that, as a matter of law, the state's sovereign interest in conducting property tax foreclosures under its own state law is significant, and state law should not be displaced by an avoidance action under the Bankruptcy Code absent Congress's 'clear and manifest' direction." *Canandaigua Land Dev., LLC v. Cty. of Ontario (In re Canandaigua Land Dev., LLC)*, 521 B.R. 457, 472 (Bankr. W.D.N.Y. 2014) (citing to cases applying *BFP* in the context of preference actions in referencing the minority position, but ultimately determining that transfer of debtor's property is avoidable under § 548), vacated by No. 11-20888-PRW, 2017 WL 2821874, *2 n.1 (Bankr. W.D.N.Y. June 29, 2017) (vacating underlying decision in the context of § 707 dismissal and noting that "[t]he Court continues to mull over whether it properly applied all of the factors identified by the Supreme Court in *BFP*"), and abrogated by *Gunsalus v. Ontario Cty.*, 576 B.R. 302 (Bankr. W.D.N.Y. 2017). Courts extending the reasoning of *BFP* to strict foreclosure of tax liens have relied on the existence of appropriate procedural safeguards ensuring due process within the state tax foreclosure scheme to determine that property transferred through a tax lien foreclosure may not be recovered as a constructively fraudulent conveyance—without regard to whether the property

was sold in a market process. *See, e.g.*, *Fisher v. Moon (In re Fisher)*, 355 B.R. 20, 23, 26 (Bankr. W.D. Mich. 2006) (determining that there is "no distinction between a foreclosure sale and a forced tax sale" and, if the taxing authority "followed the State's procedural requirements, the sale price alone will not be cause for setting aside the transfer[,]" but also concluding that the point at which title passed in the property "was after the last day of redemption as determined in the Final Judgment of Foreclosure" such that the taxing authority's sale of the property to a third party post-petition did not violate the stay); *In re Murray*, 276 B.R. 869, 878 (Bankr. N.D. Ill. 2002) (noting, in context of tax sale only involving the purchase of delinquent taxes and not the underlying title to the property, that, "[b]y analogy, BFP logically applies to tax sales. The Debtor has failed to adduce any evidence challenging the pre-petition conduct of [tax purchaser] or any evidence that the tax sale was conducted other than in accord with the relevant Illinois state law").[7]

In determining that a mortgage foreclosure sale conducted in compliance with state foreclosure procedures would be deemed to constitute "reasonably equivalent value," the Supreme Court considered the balance of federal and state interests. *See BFP*, 511 U.S. at 544-45. "To displace traditional state regulation [regarding the conduct of mortgage foreclosure sales], the federal statutory purpose must be 'clear and manifest, . . . [o]therwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law." *Id.* (citations

---

[7] *Cf. Talbot v. Fed. Home Loan Mortg. Corp. (In re Talbot)*, 254 B.R. 63, 69 (Bankr. D. Conn. 2000) (in the strict mortgage foreclosure context, rejecting notion that BFP does not apply to strict foreclosures and noting that "BFP was not predicated on a theory that a competitive bidding process provides the most accurate indication of the market forces that define a property's value [but rather] that the states, not the market, were entitled to define the 'value' of property in the mortgage foreclosure context" and that "Connecticut strict foreclosure law provides a debtor with sufficient procedural safeguards to render it analogous to the foreclosure sale context of BFP"); *but see Chorches v. Fleet Mortg. Corp. (In re Fitzgerald)*, 255 B.R. 807, 814 (Bankr. D. Conn. 2000) (disagreeing with *Talbot's* application of *BFP's* conclusive presumption of reasonably equivalent value and concluding "that a Connecticut strict [mortgage] foreclosure has an insufficient evidentiary value to trigger the BFP conclusive presumption of 'reasonably equivalent value' under Bankruptcy Code § 548(a)(1)(B)").

omitted). The City argues that this principal should control the Court's determination of the issue presented in this case and that §§ 544, 548, and 550 should not be read to trump the Commonwealth's interest in its municipalities collecting taxes and the procedures that it has enacted to do so, including its legislative determination that municipalities should keep any value above the asserted tax debt with respect to properties transferred after foreclosure of a tax lien.[8] The City reasons that whether a state-mandated tax lien foreclosure process is intended to result in a reasonable "foreclosure price" is not the paramount consideration, but rather that a state has established a process that it believes affords due process and reflects legislative choices regarding surplus value that should not be overridden by bankruptcy law unless Congress expressly intends to do so.[9]

Section 548 provides that a trustee in bankruptcy (or debtor-in-possession) may avoid constructively fraudulent transfers, including involuntary transfers where the debtor received "less than reasonably equivalent value." 11 U.S.C. § 548. "Section 548 applies to any 'transfer,' which includes 'foreclosure of the debtor's equity of redemption.'" *BFP,* 511 U.S. at 535 (citing 11 U.S.C. § 101(54)). Section 548 does not except taxing authorities and reflects Congress's intent to ensure that certain prepetition actions by the debtor or its creditors do not prejudice the debtor's general unsecured creditors. Similarly, Congress enacted § 544 to permit a bankruptcy estate to

---

[8] *See* Reilly, *supra* note 2, at 635-36 ("The tax creditor's ability to foreclose the debtor's property interest in the surplus creates a powerful incentive for the debtor to pay the tax"); *but see Sensenich v. Molleur (In re Chase),* 328 B.R. 675, 681 (Bankr. D. Vt. 2005) ("Fraudulent conveyance statutes, whether under federal or state law, seek to avoid a windfall to the creditor, to prevent a disproportionate loss to the debtor and, especially in bankruptcy cases, to recognize the rights of unsecured creditors to all of the debtor's non-exempt assets, including non-exempt equity in real estate").

[9] *See* Reilly, *supra* note 2, at 633 (arguing that *BFP* should be read to conclude that "[t]he important aspect of a foreclosure transfer is not *how* the state regulates it, but rather *that* the state regulates it.") (emphasis added); Bartell, *supra* note 2, at 708 ("It is difficult to imagine that Congress ever envisioned the use of fraudulent transfer law to negate a transfer of real property made in compliance with the tax foreclosure laws of a state").

utilize applicable state law to recover property fraudulently conveyed prepetition. Congress enacted the Bankruptcy Code to provide a comprehensive scheme to ensure fair and ratable distribution among creditors in accordance with priorities established by Congress.[10] The avoidance powers that permit a bankruptcy estate to recover prepetition preferential payments and fraudulent conveyances are express and important components of that scheme. *See Smith*, 811 F.3d at 238 ("[t]he broader purposes of the Bankruptcy Code and its fraudulent transfer provisions [is] to ensure … a fair distribution of the debtor's assets among creditors"); *cf. BFP,* 511 U.S. at 560-61 (Souter, J., dissenting) (noting that avoiding transfer of foreclosure properties for low prices comports with the policy of maximum and equitable distribution for creditors). The Massachusetts strict foreclosure tax collection scheme does not provide any mechanism for determining the value of a property in relation to the amount of the tax lien or protections for the interests of general unsecured creditors of the taxpayer and, as such, directly conflicts with the legislative goals of Congress reflected in the fraudulent conveyance avoidance remedies of the Bankruptcy Code. *See Murphy,* 331 B.R. at 120 (identifying that states have a "strong interest in assuring … citizens meet their tax obligations and to enforce those obligations when they remain unmet. However, that interest cannot overcome Congress' policy choice that reasonably equivalent value must be obtained for a transfer of a debtor's property in the bankruptcy context, where the rights of other creditors are prejudiced"); *GGI Properties, LLC,* 568 B.R. at 247 n.10 (recognizing that "[i]ndeed one might interpret the state statute as presenting an obstacle to the objectives of Congress in enacting §§ 547 and 548 of the Bankruptcy Code thereby allowing preemption of the state statute") (citation omitted). Consequently, where the Debtor's Property

---

[10] *See Begier v. Internal Revenue Serv.,* 496 U.S. 53, 58 (1990) (describing "[e]quality of distribution among creditors" in accordance with the statutory priorities of the Bankruptcy Code as a central tenet of bankruptcy law). Avoidance of constructive fraudulent transfers, both in this context and generally, also may facilitate the debtor's fresh start. *See Smith,* 811 F.3d at 238.

was transferred pursuant to the strict foreclosure provisions of applicable Massachusetts law and the Debtor has alleged that the value of that Property substantially exceeded the amount of the Tax Obligations on the date of transfer, the Debtor has stated a claim upon which relief may be granted. *See, e.g., Gunsalus v. Ontario Cty. (In re Gunsalus),* 613 B.R. 1, 8 (Bankr. W.D.N.Y. 2020) (finding tax sale for a lien of $1,290.29, amounting to less than 5 percent of the property's value of $28,000, is constructively fraudulent as "less than reasonably equivalent value").[11] The procedural due process protections afforded the taxpayer by the Massachusetts strict foreclosure statute do not immunize the City from the fraudulent conveyance claims set out in the Complaint.[12] The lack of competitive bidding and exposure to market forces to obtain fair value for the Property under the Massachusetts tax foreclosure scheme and the alleged resulting transfer of surplus value to the City permitted by the strict tax foreclosure scheme distinguishes this case from *BFP* and its rationale for a presumption of "reasonably equivalent value" in the mortgage foreclosure context.

## Conclusion

For the reasons above and as stated on the record, the Motion is DENIED. The Court declines to rule at this time as to whether any potential recovery by the Estate pursuant to § 550 may be limited to damages rather than the Property, itself, as suggested by the "election of remedies" argument made by the City or may be subject to other equitable limitations. *See* Mot. 19; *compare Murphy*, 331 B.R. at 123 (holding *BFP* inapplicable to New York tax foreclosure statute where no

---

[11] The County moved at the district court for certification of a direct appeal of the bankruptcy court's decision to the Second Circuit. *See Gonsalus v. Cty. of Ontario*, No. 20-CV-6134-FPG, 2020 WL 3469692 at *1 (W.D.N.Y. June 25, 2020) (slip opinion). The district court granted certification of direct appeal because it already ruled that *BFP*'s presumption of "reasonably equivalent value" did not apply to these facts. *See id.; see also Hampton v. Ontario Cty.,* 588 B.R. 671, 677 (W.D.N.Y. 2018).

[12] Where a state tax lien foreclosure process provides for an auction or includes another mechanism that exposes the subject property to the market and directs any surplus to the taxpayer or junior lienholders, the reasoning of *BFP* may apply and result in a determination that reasonably equivalent value has been received by a taxpayer for purposes of a fraudulent conveyance claim if a municipality complies with that statute in transferring a property.

competitive bidding, but limiting the amount of recovery to the amount necessary to satisfy creditors of the debtor) *with Gunsalus,* 613 B.R. at 12-13 (distinguishing *Murphy* and directing conveyance of title to property back to estate as remedy for fraudulent transfer where return of the possession of the property to the debtors as providing "an indirect but important benefit to the estate—it will greatly increase the probability of a successful reorganization under the Chapter 13 plan"); *Tronox, Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 464 B.R. 606, 613–14 (Bankr. S.D.N.Y. 2012) (holding that "courts have given a very broad construction to the phrase 'benefit of the estate." Benefit for purposes of § 550 includes both direct benefits to the estate (e.g., an increased distribution) and indirect ones (e.g., an increase in the probability of a successful reorganization)").

By the Court,

Dated: November 23, 2020

Christopher J. Panos
United States Bankruptcy Judge